IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MB FINANCIAL BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 7380 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ROY A. WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MB Financial Bank ("the Bank") has sued Roy Walker to recover $3.7 million for breach of a subordination agreement and a collateral assignment and for tortious interference with the Bank's $19 million credit agreement with WES Construction Company ("WES"). Mr. Walker was the president and majority shareholder of WES. (*Complaint,* ¶¶1-9). The purpose of the credit agreement, in part, was to finance a leveraged employee stock ownership plan buyout of WES stock from its individual shareholders and to provide some working capital for WES. In order to facilitate the credit agreement, Mr. Walker entered into the subordination and collateral assignment agreement with the Bank. He received two subordinated promissory notes from WES, totaling a little over $5 million. On behalf of himself and WES, he agreed to subordinate all debts owed to him by WES and he assigned his interest in the promissory notes to the Bank. (*Complaint,* ¶¶1-9, 22-26, 27-29). The Bank claims that he then orchestrated a series of self-dealing transactions through his various companies, including having WES satisfy its $5 million debt to him while owing the Bank over $7 million. (*Complaint,* ¶¶8,16-17, 31-33, 35, 37-40, 44-46, 50-51, 53-55).

Mr. Walker, who is from Nevada, has moved to dismiss the Bank's complaint for improper venue under Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. §1391.  He points out that WES is a Nevada company doing business in Nevada, the agreements relate to loans the Bank made to WES in Nevada for use in Nevada, all of the alleged self-dealing and payments occurred in Nevada, and that "every event alleged in Plaintiff's complaint took place in Nevada." (*Walker's Memorandum*, at 9).  The Bank's Complaint alleges conclusorily that "[v]enue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this litigation occurred or otherwise arose in this district." (*Complaint*, ¶14).

The Complaint states that Mr. Walker is a Nevada citizen, and that all his companies, including WES, are Nevada corporations.  (*Complaint*, ¶¶3, 12).  It concludes that Mr. Walker "transacted business in the State of Illinois and the contracts giving rise to this litigation are substantially connected with the State of Illinois." (*Complaint*, ¶¶13). At the same time, the Complaint indicates that all of the activities making up the breach and tortious interference claims occurred between 2005 and 2008 in Nevada. (*Complaint*, ¶¶ 31-55, 62-66, 72-74, 79-83).

In its response to Mr. Walker's motion, the Bank claims that Mr. Walker acknowledged in his memorandum in support of his motion to dismiss that all of the agreements were negotiated and executed in Illinois.  That overstates the matter somewhat.  While it was conceded that Mr. Walker signed the agreements at the Bank's offices in Illinois, there was no concession that the contracts were negotiated here.  In fact, the Memorandum is silent on the question of the locus of those negotiations. (*MB Financial Bank's Response*, at 4; *Walker's Memorandum*, at 11).

The Bank also submits that the credit agreement it has with WES contains a provision that states that all disputes relating to the loan documents, which specifically include the subordination

and collateral assignment agreements, must be resolved in Illinois if the Bank chooses.  (*MB Financial Bank's Response*, at 5-6).  The credit agreement does include a provision stating that:

> [t]he Borrower . . . (b) waives any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venues within the State of Illinois for the purpose of litigation to enforce this Agreement, the Notes or the other Loan Documents, . . . .

However, "[t]he Borrower" was WES, not Mr. Walker.  While Mr. Walker signed the agreement, he did so on behalf of WES as its president, not personally.  This is no mere quiddity, but rather a fact of critical analytical significance.  It is basic that one who signs a contract in a purely representative capacity is not personally bound by its terms.  It is also true, however, that the fact that a person signs in what appears to be a representative capacity does not inevitably preclude a finding that the intent was to be personally bound as well.  *See e.g., Whitney National Bank v. Air Ambulance by B & C Flight Mgmt, Inc.*, 2006 WL 3741903 (S.D.Tex. 2006); *American Guild of Musical Artists v. Atlanta Municipal Theater, Inc.*, 310 F.Supp. 944 (N.D.Ga. 1970).  The Bank's response brief, while noting the fact of Mr. Walker's execution, does not attempt to explain how, despite Mr. Walker's execution as president of WES, he is personally bound by the waiver provision to which WES agreed or how, under basic principles of contract and agency, it can be deemed that he agreed personally to waive any objection to jurisdiction or venue in Illinois in the event he was personally sued.

It is not that there is not an argument that could perhaps be made.  *See e.g., Frietsch v. Refco, Inc.*, 56 F.3d 825, 827-28 (7th Cir. 1995); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993).  The difficulty is that the Bank's response brief did not make one or even advert to its possible existence.  It simply assumed that despite his execution of the agreement as WES's

3

president, Mr. Walker was bound by the waiver provision.  But that assumption, itself, constitutes a waiver of the argument by the Bank.  The Seventh Circuit has "made clear... that it is not the obligation of [a] court to research and construct legal arguments open to parties, especially when they are represented by counsel, and [it] ha[s] warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)(internal quotation marks omitted).  Indeed, this theme finds repeated expression in the Seventh Circuit's cases.  *See e.g., Plan Trust Funds v. Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 789 (7th Cir. 2007); *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690 (7th Cir.2006); *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir.2005); *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005); *United States v. Cusimano*, 148 F.3d 824, 828 n.2 (7th Cir. 1998); *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 848 F.2d 1415, 1418 (7th Cir. 1988).

The arguments under §1391(a)(2) are more substantially developed.  To those issues we now turn.  Section 1391(a)(2) provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, . . . be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated."[1]  The Bank claims that a substantial part of the events that gave rise to its lawsuit did, indeed, occur in this district. (*Complaint*, ¶ 14).  Beyond that, however, there is little elaboration.

·

---

[1] The only other options for venue would be "a judicial district where any defendant resides" under §1391(a)(1) – here, that would be Nevada – because §1391(a)(3) is inapplicable since Mr. Walker clearly could have been sued in Nevada.

4

It is not well-settled which party bears the burden of proof once venue is challenged. The *Wright Miller* treatise calls the rule that plaintiff bears the burden the "better rule" and the rule that "represents the weight of judicial authority." 14D Wright Miller & Cooper, Federal Practice & Procedure, §3826, at 555-62 (2007). Moore's Federal Practice treatise calls the rule that defendant bears the burden the "correct one." 17 Moore's Federal Practice, § 110.01[5][c] (2004). Moore's assessment runs contrary to the weight of authority and appears to be based on the fact that improper venue is an affirmative defense, meaning that the defendant has the burden of proof. But so too is personal jurisdiction an affirmative defense, *see e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 596 (7th Cir. 2007); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1289 (7th Cir. 1989), and the plaintiff has the burden of establishing it. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *GCIU-Employer Retirement Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

Moore's also notes that the defendant must put venue in issue or waive it. The same, though, is true of personal jurisdiction, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999), and, moreover, a court may *sua sponte* transfer a case for improper venue. 28 U.S.C. §§1404(a); 1406(a); *Trujillo v. Williams*, 465 F.3d 1210, 1222 (10th Cir. 2006); *Janis v. Ashcroft*, 348 F.3d 491, 493 (6th Cir. 2003); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir. 1993); *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986); *United Financial Mortg. Corp. v. Bayshores Funding Corp.*, 245 F.Supp.2d 884, 896 (N.D.Ill. 2002). Finally, the treatise concedes that placing the burden on the plaintiff is justified only in cases involving an exclusive venue statute, such as patent cases, reasoning that "[b]ecause the plaintiff has the burden of proving patent infringement, it makes sense

to shift the burden of proof on the venue issue to the plaintiff . . . ." But that would hold true for almost any type of claim a plaintiff brought.

The courts in this district have held that once venue is challenged, the plaintiff bears the burden of establishing it filed its case in the proper district.   *See e.g., Johnson-Ester v. Schwarzenegger*, 2010 WL 1257787, *2 (N.D.Ill. 2010); *AT & T Capital Services, Inc. v. Shore Financial Services, Inc.*, 2010 WL 2649874, *7 (N.D.Ill. 2010); *Specht v. Google, Inc.*, 660 F.Supp.2d 858, 866 (N.D.Ill. 2009); *Woodrum/Ambulatory Systems Development, LLC v. Lakeshore Surgical, LLC*, 2009 WL 256286, *4 (N.D.Ill. 2009); *Giordano v. City of Palm Bay*, 2007 WL 4365341, *2 (N.D.Ill. 2007); *Gencor Pacific, Inc. v. Federal Laboratories Corp.*, 2007 WL 2298367, *1 (N.D.Ill. 2007); *Interlease Aviation Investors II (Aloha) LLC. v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 913 (N.D.Ill.2003); *Peitsch v. Regency Cruises Inc.*, 664 F.Supp. 362, 364 (N.D.Ill.1987).

Most of these cases have been based on the Seventh Circuit's decision in *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182 (7th Cir.1969), where the court stated it was plaintiff's burden to establish proper venue. *Id.* at 1184.[2] Thus, it is for the Bank to show that a substantial part of the events giving rise to this litigation took place in the Northern District of Illinois. As already noted, the Complaint does not say much along those lines; the only mention of Illinois is the

---

[2] There is a Seventh Circuit opinion that suggests the opposite. In *Matter of Peachtree Lane Assocs.*, 150 F.3d 788 (1998), the court held that the district where a party filed its Chapter 11 Bankruptcy petition "is resumed to be proper, and the party challenging venue bears the burden of establishing by a preponderance of evidence that the case was incorrectly venued." 150 F.3d at 792. Notably, venue in cases such as *Peachtree* is governed by 28 U.S.C. §1408, not §1391. The case has never been cited in this district for this proposition outside the Bankruptcy context. Interestingly, Moore's relies on *Peachtree* as support for the proposition that, in all cases save case with special venue provisions, the burden of proof should be on the defendant. Section 1408, under which *Peachtree* was decided, is, of course, just such a statute.

6

assertion that Mr. Walker transacted business in the state. (*Complaint*, ¶13).[3] Mr. Walker may have transacted a substantial amount of business in Illinois, and none of it may have had anything to do with this case.  Moreover, while the Bank's allegations must, in the first instance, be accepted as true, here, they have been challenged with an affidavit from Mr. Walker. *Johnson-Este*, 2010 WL 1257787, *2; *Doe v. Cultural Care, Inc.*, 2010 WL 3075711, *2 (N.D.Ill. 2010); *Hanyuan Dong v. Garcia*, 553 F.Supp.2d 962, 965 (N.D.Ill. 2008); *Interleave Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 262 F.Supp.2d 898, 913 (N.D.Ill.2003).  And the Bank has responded with its own affidavit from Mark Kosminskas, one of its vice presidents.  *See Continental Cas. Co. v. American Nat. Insurance. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)("Under Rule 12(b)(3), the district court was not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment.").

Originally, in its response brief to Mr. Walker's motion, the Bank asserted that Mr. Walker negotiated and executed the collateral assignment and subordination agreements in Illinois after soliciting the Bank's assistance in providing WES with a line of credit.  (*MBFinancial Bank's Response*, at 5).  It argued that as a consequence, venue was proper in Illinois under §1391(a)(2). (*MBFinancial Bank's Response*, at 5).  As already noted, the Bank did not cite to anything in support of these assertions and, thus provided no evidence of its claims.  Unsupported statements in briefs are not evidence and do not count.   *See Woolard v. Woolard*, 547 F.3d 755, 760 (7th Cir.2008); *United States v. Stevens*, 500 F.3d 625, 628-29 (7th Cir.2007); *Ner Tamid Congregation of North Town v. Krivoruchko*, 620 F.Supp.2d 924, 928 (N.D.Ill. 2009)(collecting cases).

---

[3] In fact, the Complaint indicates that all of the activities making up the breach and tortious interference claims occurred between 2005 and 2008 in Nevada. (*Complaint*, ¶¶31-55, 62-66, 72-74, 79-83).

7

Along with his reply brief, Mr. Walker submitted evidence in the form of his affidavit. According to Mr. Walker, WES went through Morgan Stanley in Reno, Nevada, to obtain financing for the leveraged buyout. (Walker Aff. ¶ 2). One of the proposals came from MB Financial Bank, and in late September or early October 2005, a representative from the Bank, Gary Karsh, went to Reno to talk with individuals from WES and solicit a loan application. (Walker Aff. ¶ 3). Toward the end of October, Mr. Karsh returned to Reno to negotiate the terms of the loan. (Walker Aff. ¶ 4). There were no negotiations regarding the collateral assignment or subordination agreements. (Walker Aff. ¶ 4). On October 31, 2005, Mr. Walker went to Chicago for the sole purpose of signing the loan agreement, the collateral assignment agreement, and the subordination agreement. (Walker Aff. ¶ 6). Then, of course, all of the purported wrongdoing of which the Bank complains took place in Nevada among WES and Mr. Walker's other companies.

Because Mr. Walker did not submit his affidavit until his reply brief, by *sua sponte* minute order, I afforded the Bank an opportunity to respond to the affidavit. (*See* Minute Order of 8/3/10 [Docket No. 40]). The Bank thereafter submitted Mr. Kosminskas's affidavit, in which he said that Mr. Walker executed the credit agreement on behalf of WES, but did not say where. (Kominskas Aff. ¶5). He explained that Gary Karch (presumably the same individual as the Gary "Karsh" of Mr. Walker's affidavit) was formerly a senior vice president with the Bank in Chicago and, Mr. Kominskas believed, still resided there. (Kominskas Aff. ¶6). Finally, Mr. Komiskas says that Mr. Walker traveled to Chicago to execute the collateral assignment and subordination agreements. (Kominskas Aff. ¶8). When carefully read, Mr. Kominskas' affidavit does not contradict Mr. Walker's affidavit in any meaningful way. For the purposes of venue, it really doesn't matter where

8

Mr. Karch lives or where his office is.  The critical question is where the contract was negotiated.
On this point, Mr. Walker's affidavit is unrebutted.[4]

In determining whether a substantial part of the events or omissions giving rise to the
plaintiff's contract claim occurred or did not occur in a particular district, "the factors that the courts
tend to focus on include: where the contract was negotiated or executed, where the contract was to
be performed, and where the alleged breach occurred." 14D Wright Miller & Cooper, Federal
Practice & Procedure, §3806.1, at 205-12 (2007); *Gulf Insurance. Co. v. Glassbrenner,* 417 F.3d
353, 357 (2nd Cir.2005).  Based on the parties' affidavits, the only thing that happened in Illinois that
has anything to do with this lawsuit is that Mr. Walker signed the agreement here.  That, alone, is
not enough.  The fact that Mr. Walker flew to Illinois to sign some documents and then flew back
to Nevada is not substantial when the agreements were solicited and negotiated in Nevada, the
money went to a Nevada company, and all the purported wrongdoing concerning that money – the
acts that truly gave rise to the Bank's lawsuit – happened in Nevada.  As Judge Shadur explained in
*Financial Management Services, Inc. v. Coburn Supply Co., Inc.,* 2003 WL 255232 (N.D.Ill. 2003):

> It will not do to say, "Well, after all, the contract that was breached was an Illinois
> contract". . . . . That argument could have force if this lawsuit had instead charged
> (say) fraud or other misconduct in connection with the negotiation or execution of the
> Agreement.  But the entry into the Agreement is no more "a substantial part of the
> events or omissions giving rise to the claim" than, for example, the fact of a person's
> getting aboard a Metra train in Highland Park would fit that description if a claim
> were to be based on an accident sustained by that same commuter passenger who,
> after leaving the train and beginning to walk to the office, were to be hit by a
> speeding taxi that runs a red light on Wacker Drive.  That is, the hypothesized
> accident would certainly not have happened "but for" the train ride that preceded it,
> in the same sense that the asserted fraud and breach of contract in this case would not

---

[4] Thus, whether or not conflicts in affidavits must be resolved in favor of the plaintiff as the Seventh
Circuit held in *John Walker & Sons, Ltd. v. De Mert & Dougherty, Inc.* 821 F.2d 399, 402 (7th Cir. 1986),
is an issue that need not be addressed.

have happened "but for" the contract signing that preceded them (in this instance by years, not by minutes or hours).  Just as in other areas of law a mere "but for" relationship does not automatically equate to proximate cause, here such a "but for" relationship does not cause the years-earlier signing of the Agreement to constitute "a substantial part of the events or omissions giving rise to the claim[s]" that arose much later.

2003 WL 255232, *2.

Neither of the two cases the Bank points to to support venue in Illinois involved a contract that was merely signed in Illinois. (*MB Financial Bank's Response*, at 6). In *Vandeveld v. Christoph*, 877 F.Supp. 1160 (N.D.Ill. 1995), the action arose from a partnership agreement that was "negotiated, consummated, and modified during the course of meetings taking place in Chicago." *Id.* at 1166. And in *First Nat. Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902 (N.D.Ill. 2006), the defendant's agent traveled to Illinois to solicit plaintiff and negotiated the contract while there. *Id.* at 911.

Failing all this, the Bank contends that it suffered the economic injury from Mr. Walker's alleged tortious interference with its relationship with WES at "home" in Illinois, and contends that the place of injury is the most important thing a court can consider for venue in a tortious interference claim.  (*MB Financial Bank's Response*, at 6).  At first blush, this appears to be an inaccurate statement of the law.  If the situs of a plaintiff's economic injury were dispositive, §§1391(a)(1) and 1391(a)(3) would be superfluous. *Financial Management Services, supra,* 2003 WL 255232, *2.  A plaintiff could always sue in its home district because, after all, home is where the wallet is.  Moreover, Congress amended §1391 specifically to *remove* the plaintiff's home from the venue equation.  *See* 14D Wright, Miller & Cooper, § 3806.1 at 214-15 ("otherwise venue almost always would be proper at the place of the plaintiff's residence, an option that Congress

explicitly removed with the 1990 amendments . . . ."); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)("we are reluctant to impute to Congress an intent to abandon altogether the protection of defendants as a relevant consideration in venue matters. We think it far more likely that by referring to "events or omissions giving rise to the claim," Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."); *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, *8 (S.D.N.Y. 2002)("If [the place of economic harm] were enough to confer venue, then the plaintiff's residence would always be a proper venue in tort cases, or at least in cases of business torts. But this is conspicuously *not* what Congress has provided in § 1391(a)."); *Massi v. Lomonaco*, 2010 WL 2429313, *1 (D.S.C. 2010); *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F.Supp.2d 1282, 1288 (D.Ariz. 2009); *McCormick v. Builders Transport, Inc.*, 1995 WL 710558, *1 (E.D.Pa. 1995).

The Bank has relied on *Medline Industries Inc. v. Maersk Medical Ltd.*, 230 F.Supp.2d 857, 864 (N.D.Ill. 2002) apparently to support its claim that the place of injury is a significant factor in determining proper venue. And indeed, there is language in Judge Alesia's opinion stressing the importance of salience of that factor. The difficulty, however, with the argument is that "[j]udges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). *See also East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005)("Although we stated in *Panoramic* that damages would not adequately remedy a permanent loss of jobs... that language must be read in context."). "[I]t is a disservice to judges and a misunderstanding of the judicial process to wrench general language in an opinion out of context." *Aurora Loan Services, Inc. v. Craddieth*, (7th Cir. 2006). As Justice Scalia has pointedly put it, "[o]ne must read cases, however, not in a vacuum, but in light of their

11

facts...." *Penry v. Lynaugh*, 492 U.S. 302, 358 (1989)(Scalia, J., concurring in part and dissenting in part). What the Ninth Circuit said in *United States v. Corey*, 232 F.3d 1132, 1166 (9th Cir. 2000), could well describe the Bank's reliance on *Medline Industries:* "The [defendant] quotes selectively from th[is] case[ ] but, when read in context, the statements have little to do with our case."

*Medline Industries* is not a venue case, but a conflict of laws case, with its different standards. Indeed, the word "venue" appears nowhere in the opinion. Citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), which, of course, is the classic conflict of laws case, the district court in *Medline* said: "Before evaluating the merits of Maersk's motion [to dismiss pursuant to Rule 12(b)(6)], the court must determine what substantive law applies. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." *Id.* at 861. The district court ultimately held that: "Illinois applies the 'most significant relationship' test to determine which jurisdiction's substantive law governs tort claims such as tortious interference." Under that test, which applies in conflict cases, the place of injury is the most important factor. *Id.* at 864. [5]

In short, merely because the Bank suffered economic harm in Illinois by virtue of its being situated here, does not mean that venue is proper in this district. The question thus becomes: what to do?  28 U.S.C.§1406(a) gives the district court an option:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

_____

[5] There appears to be a single case from this district where the court rested its venue decision on where the plaintiff sustained economic injury. But *Celozzi v. Boot*, 2000 WL 1141568 (N.D.Ill. 2000) gave no consideration to the prevailing weight of authority, and instead relied on cases from the previous version of §1391, before Congress's amendment.

"[T]he interests of justice" is one of those phrases that eludes easy definition. It is "not a definite standard, departure from which an appellate court can readily discern and correct." *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). The Bank, having wagered its all on venue being properly based solely on Mr. Walker signing a contract in Chicago, where it is situated, does not make a case for transfer over dismissal.

In any event, the presumption generally runs in favor of transfer. *See Davis v. American Society of Civil Engineers*, 290 F.Supp.2d 116 (D.D.C. 2003); *United Financial Mortg. Corp. v. Bayshores Funding Corp.*, 245 F.Supp.2d 884, 896 (N.D.Ill. 2002); *Samain v. Advent Product Development*, 2008 WL 4501497, *3 (C.D.Cal. 2008); 14D Wright Miller & Cooper, §3827, at 605. *Cf. Mosey Mfg. Co. v. NLRB*, 701 F.2d 610, 615 (7th Cir.1983)(en banc); *Noonan v. Cunard S.S. Co.*, 375 F.2d 69, 71 (2nd Cir.1967)(Friendly, J.). And the court has "broad discretion" to order a transfer, which is reversible only where there has been a "clear abuse." *See Continental Insurance Co. v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003); *Cote*, 796 F.2d at 985.

Often, courts are concerned with whether dismissal will endanger the plaintiff's claims under the applicable statute of limitations. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (explaining that § 1406(a) was enacted to protect against issues involving statute of limitations by preserving plaintiff's filing date when he makes mistake regarding proper venue); *Granger v. Rauch*, slip.op. 2010 WL 3037780, 4 (7th Cir. July 22, 2010)(collecting cases). Illinois' limitations period for a contract claim is ten years, 735 ILCS 5/13-206, but Nevada's is only six. N.R.S. 11.190(1)(b). Under Illinois law, a tortious interference claim must be brought in five years, *Poulos v. Lutheran Social Services of Illinois, Inc.*, 312 Ill.App.3d 731, 728 N.E.2d 547, 559 (1st Dist. 2000), while in Nevada, the limit is perhaps just three years. N.R.S. 11.190(3)(e).

13

Depending upon how a court resolves issues of applicable law and when the Bank should have become aware of its claims, the Bank could possibly be running up against these deadlines. Moreover, without even suggesting a view on the merits, the Bank's Complaint does not appear frivolous or implausible. In short, in light of these and the other factors discussed earlier, it is in the interests of justice to transfer this case to the District of Nevada.

## CONCLUSION

The Defendant's Motion To Dismiss Based Upon Improper Venue Or In the Alternative To Transfer The Case To The District of Nevada [#19] is GRANTED. Although it certainly appears that a transfer pursuant to 28 U.S.C. 1404(a) – which is the alternative relief sought by ¶¶17-22 of Mr. Walker's Motion – would be appropriate, transfer of the case is not pursuant to that section of the United States Code, but rather to 28 U.S.C.§1406(a). That transfer is in the interests of justice and Mr. Walker is subject to personal jurisdiction there and venue is proper there. The case will be transferred to the United States District Court for the District of Nevada.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 9/23/10

14